IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STEVEN DURAN,

    Plaintiff,

v.                                                      No. 13-CV-403 MCA/KBM

MARATHON ASSET MANAGEMENT, LP
a Delaware limited partnership,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on *Defendant's Motion to Dismiss the Complaint for Improper Venue and Failure to State a Claim.* [Doc. 12] Having considered the parties' submissions, the relevant law, and being fully advised in the premises, the Court **GRANTS** the motion. In addition, the Court **DENIES** Plaintiff's *Motion and Memorandum to Strike, or in the Alternative, Refuse to Consider New Issues Raised in Defendant's Supplemental Brief.* [Doc. 19]

**I.    BACKGROUND**

Plaintiff originally filed this action in the New Mexico State Court,[1] bringing counts of Breach of Fiduciary Duty, Prima Facie Tort, Breach of Contract, Unjust Enrichment, Fraud or Misrepresentation, and Punitive Damages. [Doc. 1-1, pp. 6-10]

---

[1] The action was filed as *Duran v. Marathon Asset Management, LP,* Number D-101-CV-2013-00878 in the First Judicial District Court, County of Santa Fe, State of New Mexico.

1

Plaintiff alleges that he was a principal of a Company[2] which was negotiating with Defendant for a $15,000,000 loan secured by property in Santa Fe County, New Mexico. [Doc. 1-1, ¶ 8] In negotiations regarding the loan, Rick Jaramillo, another principal of the Company, signed four "Term Sheets" prepared by Defendant from August through November of 2011. [Doc. 1-1, ¶ 9; Doc. 12-1, pp. 3-18] A subsequent Term Sheet dated January 30, 2012 was prepared but never signed. [Doc. 1-1, ¶ 9] Plaintiff never signed a Term Sheet. [Doc. 12-1, pp. 3-18]

The relevant Term Sheet, dated September 30, 2011,[3] is written in the form of a letter, and states:

> After reviewing the information that has been provided on the above referenced property, I have outlined the general terms under which one or more affiliates or managed accounts of Marathon Asset Management, L.P. ("Lender") would consider proceeding with the underwriting of the proposed financing (the "Loan"). If after reviewing these business terms, the undersigned ("Applicant") is interested in proceeding, kindly have them sign and return this term sheet along with the Deposit (defined below) and a $7,500 non-refundable application fee. Lender will commence underwriting upon receipt of the signed term sheet and fees, and assuming the Loan is approved, anticipates closing the Loan within 30 days from receipt of such items.

---

2 The record and briefs alternatively identify the Company as "Market Station at the Railyards" [Doc. 1-1, ¶ 8], "Railyard Company LLC" [Doc. 12-1, p. 14], or "A to-be-formed or existing single asset entity. . ." [Doc. 12-1, p. 11] For ease of reference, the Court will simply refer to the Company.

[3] While the format and outline of the term sheets are consistent from term sheet to term sheet, some terms vary, particularly terms of the proposed loan as well as the identity of the principals. The Court concludes, *supra*, that the September 30, 2011 Term Sheet was accepted by the Company, in part through the acts of Plaintiff, and thus is the relevant Term Sheet.

[Doc. 12-1, p. 11]   The Term Sheet includes a "Good Faith Deposit" clause, which states:

> To induce Lender to consider this proposal, Applicant hereby deposits with Lender the sum of $75,000 as a good faith deposit ("the Deposit").  The Deposit shall be used for due diligence expenses, third party reports (engineer, environmental, appraisal), legal fees, and underwriting costs.  If the Loan is not approved based substantially upon the terms hereof, the Deposit will be returned to Applicant, without interest, less any costs and expenses incurred by Lender.   If the Loan is approved substantially upon the terms hereof, the Commitment Fee shall be earned, and the remaining Deposit (if any) shall be applied toward Lender's expenses and the Commitment Fee.

[Doc. 12-1, p. 13]   The Term Sheet also states:

> THIS TERM SHEET HAS BEEN PREPARED FOR THE SOLE PURPOSE OF DISCUSSING WITH THE BORROWER AN OPPORTUNITY TO ENTER INTO A TRANSACTION.  ACCORDINGLY, THIS IS NOT A COMMITMENT BY LENDER TO PROVIDE ANY FINANCING WHETHER DESCRIBED HEREIN OR OTHERWISE.  ANY SUCH COMMITMENT WILL ARISE SOLELY PURUSANT TO A MUTUALLY EXECUTED DEFINITIVE AGREEMENT REGARDING A COMMITMENT TO ENTER INTO A FINANCING ARRANGEMENT.
> . . .
> Please acknowledge your acceptance of the terms and conditions relating to the financing described herein by executing the acknowledgement below.  By your signature below, you agree to work exclusively with Lender with respect to the financing for a period of 45 days and to proceed in good faith towards mutually acceptable loan documents.

[Doc. 12-1, p. 13-14]   Finally, the Term Sheet contains the following choice of law and forum selection provisions: "This term sheet shall be governed by and construed and interpreted in accordance with the internal laws of the State of New York, without regard to principles of conflicts of laws.  Applicant submits to the exclusive jurisdiction of the courts of the State of New York for the resolution of any dispute in connection with this

3

term sheet." [Doc. 12-1, p. 14]

Plaintiff transferred $75,000.00 from his personal account to Defendant in connection with the September 30, 2011 Term Sheet. [Doc. 1-1, ¶ 12] Plaintiff alleges that the "transfer of funds resulted from continued pressure by Defendant threatening [to] terminate negotiations and a possible loan to Market Station at the Railyards at a time when Defendant knew or should have known that Market Station at the Railyards was desperately in need of financing to resolve an unfortunate financial situation." [Id.] Further, Plaintiff alleges "Defendant was provided with a $7,500.00 non-refundable application fee by check on or around September 30, 2011. However, that check bounced and Defendant did not receive a wire in the amount of that check until October 27, 2011." [Doc. 1-1, ¶ 13] Plaintiff alleges that negotiations continued after October 27, 2011, during which he "kept Defendant aware" that he wanted a refund of the entire $75,000 if the transaction was not consummated, and that "[a]t one point during the discussions Plaintiff was told not to worry, that the entire $75,000.00 would be refunded to him." [Doc. 1-1,¶ 17] Plaintiff also alleges that "[t]hroughout the continuing negotiation process" Defendant knew or should have known that it was held to "a much higher fiduciary obligation to Plaintiff" than it would have had to the Company because Defendant "accepted a transfer from a personal individual account rather than from the business account" of the Company. [Doc. 1-1, ¶ 16]

On November 16, 2011, Rick Jaramillo signed another term sheet agreeing to work with Defendant toward financing for another 45 days. [Doc. 12-1, p. 18] While terms

regarding the proposed loan were different from those in the September 30, 2011 Term Sheet, the terms regarding the forum selection clause, the purpose of the term sheet, and the Good Faith Deposit were the same. [Doc. 12-1, pp. 11-18] Finally, in January 2012, a term sheet was prepared but never executed. [Doc. 1-1, ¶ 14] Defendant and the Company did not reach an agreement on the Loan. [Doc. 1-1, ¶ 19] According to Plaintiff: "Defendant was requested to refund the $75,000.00 deposit. The initial response to demands for refund of the $75,000.00 was made on June 4, 2012 with an offer to refund $25,568.50." [Doc. 1-1, ¶ 19] Plaintiff refused this offer, and negotiations resulted in two higher offers, with the final refund offer of $45,548.25. [Doc. 1-1, ¶¶ 19-23] Plaintiff alleges that, despite his demands, Defendant has refused to provide any additional amount of a refund, or documentation evidencing alleged expenditures. [Doc. 1-1, ¶¶ 23, 25, 26] Further, Defendant would only release the $45,548.25 if Plaintiff signed a release, and "threatened that if litigation is commenced, Defendant will charge a breakup fee as provided in the various Term Sheets." [Doc. 1-1, ¶¶ 22, 23]

After Plaintiff filed this action in State Court, Defendant removed the case to this Court. [Doc. 1] After two agreed extensions, Defendant filed this Motion to Dismiss, arguing both that the forum selection clause requires this case to be dismissed for improper venue and that Plaintiff has failed to state a claim upon which relief can be granted. [Doc. 1; Doc. 12] After briefing was complete, the United States Supreme Court decided *Atlantic Marine Construction Company v. United States District Court for the Western District of Texas*, 134 S.Ct. 568 (2013) which held that 28 U.S.C. § 1404(a) and the

doctrine of *forum non conveniens* are the appropriate mechanisms to enforce contractual forum selection clauses. *Id.* at 580. Thus, *Atlantic Marine* abrogated *Hancock v. AT&T Co.*, 701 F.3d 1248, 1260-61 (10th Cir. 2012), which stated that a motion to dismiss based on a forum selection clause "is frequently analyzed as a motion to dismiss for improper venue under [Rule]12(b)(3)." *Id.* (internal quotation marks and citation omitted). Given the decision in *Atlantic Marine*, the Court ordered the parties to file supplemental briefs "limited to application of *Atlantic Marine* to the present case." [Doc. 16] Supplemental briefs have been submitted by both parties, and the Court is now fully advised in the premises. [Doc. 17; Doc. 18]

## II.   ANALYSIS

### A.   Relevant Law

"The enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Atl. Marine Constr. Co.*, 134 S.Ct. at 581 (internal quotation marks and citation omitted). A forum selection clause controls unless the opposing party can "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15 (1972).

In *Atlantic Marine*, the United States Supreme Court settled the issue of which procedural mechanism governs a motion to enforce a forum selection clause. *Atl. Marine*, 134 S.Ct. at 578-79. The Court determined that 28 U.S.C. § 1404(a) and the doctrine of

*forum non conveniens* "provide the appropriate enforcement mechanisms" for a forum selection clause, rather than 28 U.S.C. § 1406(a) (concerning cases filed in the "wrong" venue) and Federal Rule of Civil Procedure 12(b)(3) (governing a motion to dismiss for improper venue). *Atl. Marine*, 134 S.Ct. at 580, *abrogating Hancock*, 701 F.3d at 1260-61 (holding that a motion to dismiss for improper venue under a forum selection clause is analyzed under Rule 12(b)(3) and discussing the burdens on each party)). Distinguishing between a "venue" and a "forum," the Court pointed out that "venue is proper so long as the requirements of [28 U.S.C.] § 1391(b) are met, irrespective of any forum-selection clause," and thus Section 1406(a), which applies to cases brought in the wrong venue, is inapplicable to enforcement of a forum selection clause. *Atl. Marine*, 134 S.Ct. at 577-78. The Court concluded that:

> a forum-selection clause may be enforced by a motion to transfer under § 1404(a) . . . which provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

*Id.*, 134 S.Ct. at 575 (quoting 28 U.S.C. § 1404(a)).

Of particular importance in this case, the Court went on to state:

> [T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens.* Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer. . . . For the remaining set of cases calling for a nonfederal forum, § 1404(a) has no application, but the residual doctrine of *forum non conveniens* has continuing application in federal courts. . . . And because both § 1404(a) and the *forum non conveniens*

7

> doctrine from which it derives entail the same balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum.

*Atl. Marine*, 134 S.Ct. at 580 (internal quotation marks and citations omitted). Thus, in cases where the forum selection clause points to a state forum, requiring dismissal from the federal court, the Court observed that "dismissal would work no injustice on the plaintiff" because "the plaintiff has violated a contractual obligation by filing suit in a forum other than the one specified in a valid forum-selection clause." *Id.* at 583 n.8.

Finally, the Court held that when a forum selection clause is at issue, the analysis under § 1404(a) must be modified in three ways, two of which are relevant here. First, rather than the burden falling on the defendant, the burden is on the plaintiff to establish that the "forum for which the parties bargained is unwarranted." *Id.* at 581. Second, because the parties have agreed to a forum, the parties have "waive[d] the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at 582. Thus, the Court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* As such, the Court "may consider arguments about public-interest factors only." *Id.* Ultimately, the Court concluded that "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id.* at 581 (internal quotation marks, citation and bracket omitted).

Generally, when considering a motion based on *forum non conveniens*, the Court

looks at several, non-exclusive factors.

> An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility [sic] of a judgment if one is obtained....
> Factors of public interest also have a place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Am. Dredging Co. v. Miller*, 510 U.S. 443, 448-49 (1994) (internal quotation marks, citations and brackets omitted); *see also Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991); *MP Nexlevel, LLC v. Codale Elec. Supply, Inc.*, No. CIV 08-273 MCA/CG, Doc. 54, *10-11 (D.N.M. Aug. 4, 2008). Given *Atlantic Marine*, the Court will only consider the factors of public interest.

### B. Application of *Atlantic Marine*

The burden is on Plaintiff to demonstrate that it is against the interest of justice to apply the forum selection clause.[4] *Atl. Marine*, 134 S.Ct. at 581. Plaintiff cannot rely on

---

[4] In his Supplemental Brief, Plaintiff argues that the Court should deny Defendant's

his private interests, and must rely solely on the public interests to establish that enforcement of the forum selection clause is unwarranted. *Id.* at 582. This District Court's docket is particularly congested due to the high volume and complexity of criminal cases pending in this district, and thus this factor does not weigh in Plaintiff's favor. *MP Nexlevel,* No. CIV 08-273 MCA/CG, Doc. 54, *14-15. Next, given that this is an interstate contract matter between a citizen of New Mexico and a citizen of New York, and the contract would be performed by the parties in their respective states of citizenship, the citizens of each state have an equal interest in the dispute and jury duty in either location would not be an undue burden upon the jurors. Likewise, as this is a private contract matter, there is no strong interest in the people in New Mexico to hear this case over the interest of the people in New York. Finally, as under the Contract the laws of the State of New York will apply, this factor does not weigh in favor of trial in this Court. Thus, as none of the public interest factors weigh in favor of trial in New Mexico, Plaintiff has not

---

Motion to Dismiss because Defendant relied on Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a). [Doc. 18, p. 1] Moreover, Plaintiff states: "Should the court allow new facts- or the ability of Defendant to restructure its argument to allow it to now argue under 28 U.S.C. § 1404 or *forum non conveniens*- which Plaintiff believes would be improper because it would prejudice Plaintiff, Plaintiff requests the opportunity to respond to Defendants arguments and assertions." [Doc. 18, p. 6 n.4] Plaintiff's request is not well-taken. The Court expressly ordered briefs on application of *Atlantic Marine*, and *Atlantic Marine* applied Section 1404 and the doctrine of *forum non conveniens*. [Doc. 16] The Court thus afforded Plaintiff the opportunity to address Section 1404 and the doctrine of *forum non conveniens*. Plaintiff has not been prejudiced. Further, as Defendant's Supplemental Brief appropriately addressed application of *Atlantic Marine*, Section 1404 and the doctrine of *forum non conveniens*, the Court will **DENY** Plaintiff's *Motion and Memorandum to Strike or in the Alternative, Refuse to Consider New Issues Raised in Defendant's Supplemental Brief.* [Doc. 19]

carried his burden of establishing that enforcement of the forum selection clause is unwarranted. *Atl. Marine*, 134 S.Ct. at 582. In sum, this case is not an exceptional case in which the forum selection clause will not be given controlling weight. *Id.* at 581.

### C. The Forum Selection Clause is Mandatory

The Court now turns to the parties' additional arguments. Defendant argues that the forum selection clause in this case is mandatory, which Plaintiff does not dispute. The Court agrees with Defendant. The forum selection clause states: "Applicant submits to the exclusive jurisdiction of the courts of the State of New York for the resolution of any dispute in connection with this term sheet." [Doc. 12-1, p. 14] The Tenth Circuit has considered forum selection clauses worded in various ways, and has determined that where a clause states that a particular state Court "shall be the exclusive forum for the resolution of any disputes related to or arising out if this Term Agreement," the forum selection clause is mandatory and not permissive. *Am. Soda, LLP v. U.S. Filter Wastewater Grp., Inc.*, 428 F.3d 921, 926-27 (10th Cir. 2005). "The difference between a mandatory and permissive forum selection clause is that mandatory forum selection clauses contain clear language showing that jurisdiction is appropriate only in the designated forum." *Id.* at 926 (internal quotation marks, brackets, and citation omitted); *see also K & V Scientific Co. v. Bayerische Motoren Werke Akteingesellschaft*, 314 F.3d 494, 499-500 (10th Cir. 2002) (collecting cases considering variously worded forum selection clauses and harmonizing their holdings regarding whether the clauses were mandatory or permissive). Here, the language of the forum selection clause expressly establishes that the courts of the State of

New York are the exclusive fora for any action relating to the term sheet.  [Doc. 12-1, p. 14]

Not only is the forum selection clause mandatory, it points only to the state courts, to the exclusion of the federal courts.  [Doc. 12-1, p. 14]  In *American Soda*, our Tenth Circuit held that the language "courts of the State of" refers to the courts of the state and does not encompass the federal courts within such state.  *Am. Soda*, 428 F.3d at 926.  A federal court cannot transfer a case to state court pursuant to 28 U.S.C. § 1404(a).  Thus, unless Plaintiff can avoid the forum selection clause on another ground, this case must be dismissed.

Finally, Defendant argues, and Plaintiff does not dispute, that the forum selection clause governs all of Plaintiff's claims.  [Doc. 12, pp. 6-7]  This District has applied the standard that "where tort claims ultimately depend on the existence of a contractual relationship between the parties, such claims are covered by a contractually-based forum selection clause."  *Mann v. Auto. Prot. Corp.*, 777 F.Supp.2d 1234, 1243 (D.N.M. 2011) (internal quotation marks and citations).  "[C]ontract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties."  *Id.* (internal quotation marks and citation omitted); s*ee also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 587, 595 (1991) (applying forum selection clause to tort claim where clause governed "all disputes and matters whatsoever arising under, in connection with or incident to this Contract").  All of Plaintiff's claims (breach of fiduciary duty, prima facie tort, unjust enrichment, fraud or

misrepresentation, and punitive damages) are based on the same operative facts as Plaintiff's breach of contract claim and are tied to whether there was a contractual relationship between the parties. *See id.* Furthermore, Plaintiff alleges that the Term Sheet "*resulted in* a transfer of a $75,000.00 deposit from the personal account of Plaintiff to an account of Defendant." [Doc. 1-1, ¶ 12 (Emphasis added.)] Accordingly, the broad language of the forum selection clause, stating that it applies to "any dispute in connection with this term sheet[,]" covers Plaintiff's contract and tort claims. [Doc. 12-1, p. 14] *See Montoya v. Fin. Fed. Credit, Inc.*, 872 F.Supp.2d 1251, 1280 (D.N.M. 2012) (holding that the broad language of the forum-selection clauses covered tort claims). Thus, to give effect to the parties agreed forum selection clause, the Court must dismiss all of Plaintiff's claims.

### D.  Plaintiff is Bound by the Forum Selection Clause

Finally, Plaintiff attempts to avoid the mandatory forum selection clause by arguing that the term sheet is not a contract at all, or, if it is, he is not a party to it and cannot be bound by the forum selection clause. [Doc. 13, pp. 3-7] The Court is not persuaded by either argument.

New York law requires an offer and acceptance which demonstrate "an objective meeting of the minds sufficient to give rise to a binding and enforceable contract." *Express Indus. and Terminal Corp. v. New York State Dep't. of Transp.*,715 N.E.2d 1050,

1053 (N.Y. 1999).[5]

> In determining whether the parties entered into a contractual agreement and what were its terms, it is necessary to look . . . to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds. . . .  In doing so, disproportionate emphasis is not to be put on any single act, phrase or other expression, but, instead, on the totality of all of these, given the attendant circumstances, the situation of the parties, and the objectives they were striving attain.

*Brown Bros. Elec. Contractors, Inc. v. Beam Constr. Corp.,* 361 N.E.2d 999, 1001 (N.Y. 1977) (internal citations omitted).[6]

On September 30, 2011, Defendant offered, through a Term Sheet, to "commence underwriting upon receipt of the signed term sheet and fees." [Doc. 12-1, p. 11]  The

---

[5] The Term Sheet states:  "This term sheet shall be governed by and construed and interpreted in accordance with the internal laws of the State of New York, without regard to principles of conflicts of laws."  [Doc. 12-1, p. 14]  Thus, the Court looks to New York law in determining whether the parties have entered into a contract.  The Court would reach the same conclusion applying New Mexico law.  *See ConocoPhillips Co. v. Lyons*, 299 P.3d 844, 852 (N.M. 2012) (indicating that the purpose of contract interpretation is to determine the "purpose, meaning and intent of the parties to a contract" (internal quotation marks and citation omitted)). *Hansen v. Ford Motor Co.*, 900 P.2d 952, 960 (N.M. 1995) (stating that "our primary objective in construing [a contract's] terms is to give effect to the intent of the parties").   Thus, Plaintiff's argument that he is not bound by the choice of law clause [Doc. 13, p. 12] fails under both New Mexico and New York law, for the same reasons as his argument that he is not bound by the forum selection clause.

[6] Defendant asks this Court to apply the reasoning in a line of federal cases stemming from *Teachers Insurance and Annuity Association of America v. Tribune Company*, 670 F.Supp. 491, 498 (S.D.N.Y. 1987), in which the Court categorized "preliminary contracts" into two types. [Doc. 14, pp. 4-5]  However, recently, the New York Court of Appeals stated "While we do not disagree with the reasoning in federal cases, we do not find the rigid classifications into 'Types' useful. . . . [W]e find that it is enough to ask in this case whether the agreement contemplated the negotiation of later agreements and if the consummation of those agreements was a precondition to a party's performance."  *IDT Corp. v. Tyco Grp.*, 918 N.E.2d 913, 915 n.2 (N.Y. 2009).  Accordingly, the Court believes the appropriate inquiry is whether there was an agreement as to the terms of the Good Faith Deposit under the law as interpreted by the New York Court of Appeals.

14

evidence presented shows that the Company (through its members) accepted the offer by signing the term sheet (through Rick Jaramillo) and submitting the Good Faith Deposit (through Plaintiff) and application fee. [Doc. 1-1, ¶ 12; Doc. 12-1, p. 14] Plaintiff argues that the terms of any agreement as to a loan were still under negotiations [Doc. 13, pp. 6-7], with which the Court agrees. However, Plaintiff further argues that there was no agreement as to an applicable term sheet. [Id.] By the face of the Term Sheet, however, there were express terms as to the amount of, payment of, use of, and return of any unused portion of the Good Faith Deposit. [Doc. 12-1, p. 13] Likewise, there was a clear agreement to the forum selection clause and the choice of law provision. [Doc. 12-1, p. 14] The Term Sheet states it is an agreement that the "Lender will commence underwriting" and the proposed borrower agrees to "work exclusively with Lender with respect to the financing for a period of 45 days and to proceed in good faith toward mutually acceptable loan documents," but it "IS NOT A COMMITMENT BY LENDER TO PRIVIDE ANY FINANCING." [Doc. 12-1, pp. 11, 13, 14] Given the parties' objective manifestations to enter into a contract as of October, 1, 2011, the Court concludes that even though negotiations regarding the loan continued, these subsequent dealings do not negate the existence of the agreement formed on October 1, 2011. [Doc. 13, p. 8] Having concluded that the Term Sheet was an agreement and Plaintiff paid the Good Faith Deposit pursuant to the agreement, the parties' dispute is "in connection with [the] Term Sheet," [Doc. 12-1, p. 14] and it will be for a court in the State of New York to judge Plaintiff's argument that the Term Sheet was repudiated. [Doc. 13, p. 8]

Nor is the Court persuaded that the forum selection clause is not enforceable against Plaintiff because he was not a signatory to the contract.  *See Harry Casper, Inc. v. Pines Assocs., L.P.,* 861 N.Y.S.2d 820, 821 (N.Y. App. Div. 2008) (rejecting argument that the plaintiff was not bound by a forum selection clause "because [the plaintiff] was not a signatory to the option agreement . . . considering that Pines was a signatory and would be bound by the clause and plaintiff's rights and interests in this litigation are derivative of the rights and interests of Pines); *see also Aguas Lenders Recovery Grp. v. Suez, S.A.,* 585 F.3d 696, 701 (2d Cir. 2009) (collecting cases holding that a non-signatory is bound by a forum selection clause); *cf. Firefly Equities, LLC v. Ultimate Combustion Co.*, 736 F.Supp.2d 797, 799-800 (S.D.N.Y. 2010) (concluding that individual who signed agreement in capacity as president of company was also bound in personal capacity by forum selection clause, and collecting cases).  Plaintiff relies on *Stevenson v. Louis Dreyfus Corporation*, 811 P.2d 1308, 1309-10 (N.M. 1991), in which the New Mexico Supreme Court held a choice of law provision in a contract which was intercepted by a third party and never received or signed by the plaintiff (or anyone on his side of the contract), was not enforceable against the plaintiff.  [Doc. 13, p. 5]  *Stevenson*, however, is factually distinguishable from the case at hand, where not only was the Term Sheet signed, but Plaintiff personally evinced acceptance of the Term Sheet by submitting the Good Faith Deposit.  [Doc. 1-1, ¶ 12]  As such, this is "a dispute in connection with [the] term sheet," and Plaintiff must litigate it in a court of the State of New York.  [Doc. 12-1, p. 14]

Finally, Plaintiff argues that Defendant waived its challenge to venue by not raising

the challenge prior to removal and further by filing motions for extension of time to file its answer.[7]  [Doc. 13, pp. 9-10]  The Court disagrees.  While the parties have cited no Tenth Circuit precedent on point, nor has this Court found any, at least one Circuit Court has rejected the argument that removal waives a challenge to *forum non conveniens* under Section 1404(a).  *See Chicago, R.I & P.R. Co. v. Igoe*, 212 F.2d 378, 382 (7th Cir. 1954).  Finding the Seventh Circuit's analysis persuasive, especially in light of *Atlantic Marine*, the Court rejects Plaintiff's argument that Defendant waived its *forum non conveniens* challenge.   Nor does the Court find that the unopposed extensions of time to answer were a waiver of Defendant's right to enforce the forum selection clause.  Defendant's first pleading which was responsive to the allegations of the complaint was both timely and sought to enforce the forum selection clause.   Defendant did not waive its challenge to this forum.

### E.  Motion to Dismiss for Failure to State a Claim

Because the Court concludes that the matter should be dismissed pursuant to the forum selection clause, the Court does not address Defendant's argument that this case should be dismissed for failure to state a claim.   [Doc. 12, pp. 8-14]

### III.  **CONCLUSION**

---

7 The cases that Plaintiff cites are factually inapposite, hold that there was no waiver, and were decided under Rule 12 or 28 U.S.C. § 1406, which are inapplicable to the case at hand.  *See Sherman v. Moore*, 86 F.R.D. 471, 474 (S.D.N.Y. 1980) (holding that, under Rule 12, the defendants did not waive their right to challenge improper venue by pleading it as a defense in a timely filed amended answer); *Manley v. Engram*, 755 F.2d 1463, 1472 (11th Cir. 1985) (considering when a plaintiff has waived objections to improper venue under 28 U.S.C. § 1406).

For the foregoing reasons, the Complaint will be dismissed.

**IT IS HEREBY ORDERED** that Plaintiff's *Motion and Memorandum to Strike, or in the Alternative, Refuse to Consider New Issues Raised in Defendant's Supplemental Brief* is **DENIED.**   **[Doc. 19]**

**IT IS FURTHER ORDERED** that the Court hereby **DISMISSES** this cause of action without prejudice.

**IT IS SO ORDERED** this 31st day of March, 2014.

_____
M. Christina Armijo
Chief Judge, United States District Court